DANIEL BRODERICK, Bar #89424
Federal Defender
MATTHEW M. SCOBLE, Bar #237432
Assistant Federal Defender
Designated Counsel for Service
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorneys for Defendant
LEO N. WHEELER

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 2:10-CR-00492 GEB |
| Plaintiff, | ) | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | ) | Date:   April 13, 2012 |
| | ) | Time:   9:00 a.m. |
| Leo N. Wheeler | ) | Judge:  Hon. Garland E. Burrell, Jr. |
| Defendant. | ) | |

## **INTRODUCTION**

The defendant, Leo Wheeler, through counsel, submits this memorandum for the sentencing hearing scheduled for April 13, 2012, at 9:00 a.m.. Mr. Wheeler pled guilty to mail fraud pursuant to a written plea agreement. In that plea agreement, the government agreed to recommend a sentence at the middle of the applicable guideline range as determined by the Court. Plea Agreement pg. 3. The Plea Agreement contained stipulated guidelines to a total offense level 22. The Advisory Guideline Presentence Report (PSR) has determined that the total offense level is 25. PSR ¶ 27. Mr. Wheeler has one objection to this offense level calculation. For the reasons set forth below, Mr. Wheeler respectfully requests that the Court sentence him to 30 months in the custody of the Bureau of Prisons.

1    A 30 month sentence is sufficient but not greater than necessary
2    to comply with the purposes set forth in 18 U.S.C. § 3553(a).  Section
3    3553(a) of Title 18, United States Code, directs the Court to "impose a
4    sentence sufficient, but not greater than necessary, to comply with"
5    the following purposes:

6        (A) to reflect the seriousness of the offense, to promote
         respect for the law, and to provide just punishment for the
7        offense;

8        (B) to afford adequate deterrence to criminal conduct;

9        (C) to protect the public from further crimes of the
         defendant; and
10

11       (D) to provide the defendant with needed educational or
         vocational training, medical care, or other correctional
         treatment in the most effective manner; . . . .
12

     In imposing sentence, the Court must consider not only "the need
13
     for the sentence imposed" to achieve these goals, but must also
14
     consider:
15
         (1) the nature and circumstances of the offense and the
16       history and characteristics of the defendant;

17       (3) the kinds of sentences available;

18       (4) the kinds of sentence and the sentencing range
         [established by the sentencing guidelines].
19
         (5) any pertinent policy statement . . . issued by the
20       Sentencing Commission . . . .

21       (6) the need to avoid unwarranted sentence disparities
         among defendants with similar records who have been found
22       guilty of similar conduct . . . .; and

23       (7) the need to provide restitution to any victims of the
         offense.
24

**I.   THE NATURE AND SERIOUSNESS OF THE OFFENSE**
25
     Beginning in 2005, Leo Wheeler solicited a mortgage broker, with
26
     whom he had worked in the past, to locate investor for a real estate
27
     development project known as Hartman Road.  Investors were promised an
28
     11% return on their money. PSR ¶ 7.  Wheeler informed investors that

2

$500,000 would go toward paying off a lien on the property, and the balance would go to making infrastructure improvements. PSR ¶ 7.  Mr. Wheeler did in fact make a payment of $550,000 toward the property lien.  Beyond that, approximately $100,000 went to infrastructure improvements.  PSR ¶ 9. Then, in the late-2000s financial crisis, Mr. Wheeler  sustained heavy market losses from which he could not recover.  Mr. Wheeler began diverting funds from the Hartman Road project to other projects in an effort to keep the other projects afloat.  His hope was to use the proceeds from other projects to then reimburse the Hartman Road project.  PSR ¶ 60.

Mr. Wheeler  cooperated with the investigation, has accepted responsibility for his conduct in this case, and has expressed remorse for his actions. PSR ¶ 15.


**II.  Objection**

The Defense objects to calculating the loss as more than $1,000,000, but less than $2,500,000.

The PSR provides that the "intended loss" amount was $1,500,000, as this is the amount that Mr. Wheeler received, via broker Scott Stober, in investments for the Hartman Road Project. This $1.5 million amount (more than $1 million, but less than $2.5 million) requires a 16-level increase. The actual loss amount is more than $400,000 and less than $1,000,000, which receives a 14-level increase.

In defining "intended loss", the US Sentencing Guidelines provides that such loss  (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur . . . ." USSG § 2B1.1, application note 3(A)(ii).

In construing intended loss, <u>U.S. v. Allison</u>, 86 F.3d 940, 943 (9th Cir. 1996), the court stated "this Circuit has refused to mechanically apply USSG n 2B1.1 and has held that in calculating loss in fraud cases, the sentencing court should take a realistic, economic approach to determine what losses the defendant truly caused or intended to cause, rather than the use of some approach which does not reflect the monetary loss." The court cites <u>U.S. v. Harper</u>, 32 F.3d 1387, 1392 (9th Cir, 1994) (cert. denied) for the above proposition and gives a brief synopsis:

> In ***Harper,*** the defendant was convicted of mail fraud, equity skimming, and conspiracy to commit mail fraud and equity skimming. ***Id***. at 1388. Harper tricked homeowners who were behind on their mortgage payments into believing that if they sold their homes to him, they would no longer be obligated on their mortgages and their credit histories would not show that they had been foreclosed upon. ***Id***. at 1389. In fact, Harper rented the houses and then allowed the lenders to foreclose the properties. ***Id***. at 1388. In calculating Harper's sentence, the district court calculated the loss as the total amount of rent collected ***and*** the average fair market value of the unencumbered properties. We reversed, reasoning that Harper did not set out to take the fair market value of the homes away from the victims, and that actual loss was the realistic and economic approach to determine "loss" ***Id***. at 1392. We explicitly stated that "we ... insist upon [the] use of a realistic, economic approach to determining what losses [the defendant] truly caused or intended to cause, rather than the use of some approach which does not reflect the monetary loss." ***Id***. In so doing, we rejected the proposition that <u>U.S.S.G. § 2B1.1</u>' s definition of "loss" applied to all fraud cases except those falling within the exceptions enumerated in Note 7.

Returning to <u>U.S. v. Allison</u>, a co-defendant who worked at a bank caused credit card accounts to be opened and gave access to those accounts to the defendant. The defendant used the cards to obtain goods. The district court agreed with the USPO that the loss was $40,208.35, the amount charged. The payments of $5,000 and interest of $1,600 were not included.

The 9th Circuit determined that the economic reality was the

1   actual loss outstanding prior to the discovery of the offense. Id. at

2   944-45. The court determined this more accurately reflected the amount

3   obtained by fraud.

4       Concerning the calculation of losses, U.S. v. Allen, 88 F.3d 765,

5   (9th Cir. 1996) (the court was considering 2F1.1(b)(1) in the

6   calculation of losses; 2F1.1 has been deleted) stands for the

7   proposition that, "[l]oss is calculated using the greater of the

8   'intended loss' or the 'actual loss.' " The court goes on to say:

> If the defendant has no intent to repay or otherwise make good on
> the loan, then the "intended loss" is the gross value of the loan
> taken from the bank. *United States v. Hutchison,* 22 F.3d 846, 855
> (9th Cir.1993); *Galliano,* 977 F.2d at 1353. The court need not
> examine the actual loss because the intended loss is the maximum
> loss. *Galliano,* 977 F.2d at 1353. *United States v. Wills,* 881 F.2d
> 823, 827 (9th Cir.1989). If, however, the defendant intended to
> make good on all or part of the loan, then the "intended loss" is
> less than the gross value; and, the actual loss incurred by the
> victim is used to calculate the amount of loss if it is greater
> than the intended loss. *Galliano,* 977 F.2d at 1353 (citing, *United
> States v. Schneider,* 930 F.2d 555, 559 (7th Cir.1991); *United
> States v. Kopp,* 951 F.2d 521, 536 (3rd. Cir.1991), *United States
> v. Smith,* 951 F.2d 1164, 1167 (10th Cir.1991), and *United States
> v. Rothberg,* 954 F.2d 217, 219 (4th Cir.1992); *United States v.
> Shaw,* 3 F.3d 311, 312-13 (9th Cir.1993)).

18      The 9th Circuit relies on U.S. v. Galliano, 977 F.2d 1350 (9th

19  Cir. 1992). Regarding loans the borrower intends to re-pay, the court

20  states,

> [S]everal Circuits have recently held that when a person obtains a
> loan or contract through fraud, but intends to repay or make good
> on his part of the deal, he is not accountable for the full amount
> of the loss as 'intended loss'. Rather, in such a case, the
> intended loss is zero; only the loss actually incurred by the
> victim, if any, may be used to calculate the amount of "loss."

25      The court further states, "There is no controlling Ninth Circuit

26  law on the question whether the gross amount of a fraudulently obtained

27  loan is the amount of loss to be used for sentencing purposes." Id. at

28  1353.

U.S. v. Nichols, 229 F.3d 975, (10th Cir. 2000) states "the government bears the burden of proving the amount of loss." Moreover, to meet the requirements of the Guideline, ... the record must support by a preponderance of the evidence the conclusion that [the defendant] realistically intended a [particular] loss, or that a loss in that amount was probable." Id. (Quoting U.S. v. Ensminger, 174 F.3d 1143, 1145 (10th Cir. 1999)). It should be noted that this case relates to the deleted USSG § 2F1.1, which relates to crimes of fraud and deceit and is similar to 2B1.1(b) in that it calculates the offense level based on the amount defrauded.

Here, there is no dispute that of the approximately $1.6 million in investor money received by Mr. Wheeler, $550,000 went to paying a lien on the Hartman Road property. This "was consistent with representations made to investors" PSR ¶ 9. Beyond this expenditure, an additional $100,000 went to the Hartman Road Project. Id. The only conclusion that can be drawn from these significant expenditures on the Hartman Road Project is that, at least at its inception, it was a legitimate business venture. Focusing then on the loss the defendant actually intended to cause, it is clear that he did not intend to cause a loss of the $550,000 that was spent as investors expected. Nor did he intend to cause a loss of the $100,000 that actually went to the Hartman Road Project. Deducting these amounts from the gross loan amount the resulting loss is approximately $985,000. This loss would trigger a 14-level increase, and the defendant urges the court to so find.

III.   MR. WHEELER'S HISTORY AND CHARACTERISTICS

Mr. Wheeler has been a productive, wage-earning citizen (PSR ¶¶

42-44).  He has a single misdemeanor theft conviction.  PSR ¶ 29.

As the Court can see from the numerous letters of support he has a close relationship with his  children, a rich mosaic of friends and supporters, and he demonstrates a strong desire to live a law-abiding life now and in the future in order to be a good example to them.

**III.  SENTENCING POLICIES, VARIABLES, COMPARISONS**

As the probation presentence report details, the most significant factor in determining Mr. Wheeler 's guideline sentence is the loss adjustment. PSR ¶ 21.

United States Sentencing Commission statistics for fiscal year 2011 show that the mean sentence for defendants in Criminal History Category I convicted of fraud offenses was 31 months, and the median sentence was 21 months, well below the 30 month sentence requested in this case.[1]

Sentencing statistics also show that there is ample precedent for a sentence below the guideline range based on Booker and § 3553 considerations.  In fiscal year 2011, courts nationwide sentenced 18% of fraud defendants below the range under Booker.[2]

**IV.  RESTITUTION**

Mr. Wheeler  assumes full responsibility for paying restitution in this case, and he will not seek to discharge his restitution obligation. Plea Agreement, p. 2.  He has a history of legal and viable

---

[1] Available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Table14.pdf

[2] Available at: http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2011/Table27.pdf

employment, and he is now employed by a non-profit organization, Homes that Change Lives. PSR ¶¶ 42-44.  Mr. Wheeler  has committed himself to living a frugal life and devoting as much of his income as possible to repaying what he owes.  To that end, he has provided counsel with a check for restitution in the amount of $10,000.  A copy of this check has been provided to the government, it is made payable to the Clerk of the Eastern District of California, and will be tendered at the time of sentencing.

**V.   JUST PUNISHMENT, ADEQUATE DETERRENCE, PUBLIC PROTECTION**

The requested sentence of 30 months will have a significant impact upon Mr. Wheeler's family and friends.  He will be away from his children for a very important part of their lives.  This impact alone is sufficient punishment and will provide all the deterrence warranted by his actions.

The requested 30-month sentence will provide even greater punishment and deterrence for Mr. Wheeler  because he has never been incarcerated.  As the Seventh Circuit has recognized, "a prison sentence would mean more to [a defendant who had never been imprisoned] than to a defendant who previously had been imprisoned.  Consideration of this factor is consistent with section 3553's directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'"  United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006); see also United States v. Qualls, 373 F. Supp.2d 873, 877 (E.D. Wis. 2005)("Generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

But Mr. Wheeler 's punishment will not end with the 30 months.  He

1   will be saddled with a significant restitution amount.  Although
2   certainly deserved, it is a major financial burden.  This obligation
3   cannot be discharged in bankruptcy.  It will take years to repay.  Each
4   time Mr. Wheeler  pays on this debt he will be reminded of his actions
5   and the impact they had on the lives of others.

6        Mr. Wheeler  will also be placed on supervised release for three
7   years after his release from prison.  He will be drug tested.  His
8   finances will be monitored.  He will be required to keep his
9   supervising probation officer apprised of any significant changes in
10  his life.  The public will be adequately protected from any possible
11  wrongdoing by Mr. Wheeler.

12

13  **VII. VOLUNTARY SURRENDER AND INSTITUTIONAL RECOMMENDATION**

14       Mr. Wheeler  will be requesting that the court recommend an
15  institution in California so that he may be closer to his family.

16       Mr. Wheeler  will also be requesting that the court permit him to
17  voluntarily surrender to the institution designated by the Bureau of
18  Prisons.  Mr. Wheeler  has been on pretrial release throughout this
19  case and has complied with the directives of Pretrial Services.

20       Voluntary surrender will allow Mr. Wheeler  to continue work at
21  Homes that Change Lives in order to earn and save toward restitution
22  while the Bureau of Prisons completes the designation process.  On the
23  other hand, remand at sentencing would add the expense of
24  transportation and housing, occupy a much-needed cell at the Sacramento
25  County Jail, and unnecessarily deprive the victims of the wages Mr.
26  Wheeler  would earn in that time.  Moreover, these few additional weeks
27  on the job will improve the chance that Mr. Wheeler ' will be rehired
28  once he has served his sentence.

1

## <u>CONCLUSION</u>

2          For the reasons set forth above, Mr. Wheeler requests that this

3    Court sentence him to 30 months in the custody of the Bureau of

4    Prisons.   This sentence achieves the goals of sentencing as set forth

5    in 18 U.S.C. §3553(a).

6

7    Dated: April 2, 2012                   Respectfully submitted,

8                                           DANIEL BRODERICK
                                            Federal Defender
9

10                                            /s/ Matthew M. Scoble
                                            MATTHEW M. SCOBLE
11                                          Assistant Federal Defender
                                            Attorney for Defendant
12                                          Leo Wheeler

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28